Yes, good morning, Your Honors. May it please the court, I'd like to start off by reserving two minutes for rebuttal. Thank you. I'm hearing some background noise. Is there some way to deal with that? That took care of it. Thank you. Okay. Thank you. Your Honors, in this case, Ms. Castillanos Retana suffered... Can you hear me? I'm sorry. No. Yes, absolutely. We can hear you. Okay, great. In this case, Ms. Castillanos Retana suffered past persecution in her home country of El Salvador. She was detained at the border. She had a credible fear interview where she has always maintained that she fled her country because she had been attacked by gang members who found her on the street, recognized her as the daughter of a police officer, told her that they were going to kill her because she was the daughter of a police officer and because he had not cooperated with them when they had requested that the police officer father, Mr. Lorenzo Castillanos, work with the gangs a few days earlier. Ms. Castillanos fled her country immediately and applied for asylum. Later on during the proceedings, she also, for the first time, finally told the immigration judge and a psychologist that she had been sexually abused and suffered significant child abuse. At her hearing before the immigration judge, the immigration judge found her not credible throughout the entire decision. That was part of the issues on appeal was her credibility and this court had remanded and instructed the BIA to make a finding as to whether or not they would adopt the immigration judge's previous decision. The BIA did not touch the credibility findings or disturb the judge's credibility findings. What they found was that even if she was assumed to be credible, that they would deny all of her claims. As to her family claims, she argued before the immigration judge and the Board of Immigration Appeals that she was targeted because she was a family member of a police officer. The immigration judge, in that case, made an analysis where he found that in reality what she was doing was arguing that she was a derivative of a police officer and that police officers can never be granted asylum and that therefore her family member... Counselor, let's assume that she established a particular social group as a family member. The IJ found, and the BIA seems to have agreed, that the only mistreatment she suffered because of that was a threat, a verbal threat. And that that didn't arise to the level of past persecution. Why isn't that... What's the problem with that finding, recognizing that we review that for substantial evidence? Our case law seems to say a single threat doesn't necessarily arise to the level of past persecution. They're now focusing solely on that social group. Correct. And we would submit that the board and the immigration judge were wrong when they found that there was no past persecution while the judge... Well, what was there? What was there other than this single threat? Well, it was a threat combined with an act of violence. The gang members grabbed her, they placed a gun to her head, they threatened to kill her. So tell me what case you've got that says that compels a finding of past persecution. I understand the board might find or the IJ might find past persecution based on it, but we've got a lot of cases that say substantially more than that doesn't rise to past persecution. Yes, Your Honor. There are several cases that the Ninth Circuit has... where the Ninth Circuit has found that even less conduct has been found to be past persecution in Cerita versus INS. We found it because the boards found it, haven't we? As opposed to us independently finding it. Correct. And that... Correct. And then... Well, the government in this case relies on Duran Rodriguez. In Duran Rodriguez, the individual there was from Mexico and he had been threatened over the phone anonymously and then there was one threat in person. I think that in this situation, it's just far different from what happened in Duran Rodriguez. I think our case law is that if it is a genuine and credible death threat instead of a death threat over the phone that may or may not be serious, I think our case law is that a serious death threat under which one may reasonably understand that death will happen unless something happens, I think that our case law says that that is past persecution. The question then might be, well, how serious was this threat? Were they actually going to kill her if she didn't provide the information? And that's right. And Ms. Castellanos in this case left the country. She did not wait to find out whether or not that was going to transpire. She left the country a few days later. But she did testify that this was a serious death threat. She testified regarding her visit with a psychologist, the post-traumatic stress disorder that she had suffered, cumulatively from the child abuse she suffered, and then the 2014 incident with the gun being pointed to her head. I'd also like to point out her age. In 2014, she was 19 years old. But this young lady had already had a history of significant abuse in the past, and so she may have been... Let me ask you about that. You basically have two separate claims. One of them is family as a social group, the gun to her head, if you don't provide the information that your father is withholding from us because he's a policeman who knows this stuff. That's one claim. The other claim is sexual abuse. Could you... The sexual abuse, at least as I saw it in the record, while certainly abhorrent, I'm not sure rises to the level of persecution. Could you describe in as favorable terms as your client can do them what the sexual abuse was? And I gather it was by the father rather than by the stepfather. Correct. She testified that she had been... that she had suffered a sexual molestation at the hands of her father. Yes, can you describe that? I mean, what do you mean by sexual molestation? Yes, let me look at the certified administrative record. It's twofold. One of them is the significant child abuse she suffered with her stepfather, the domestic violence, and then when she meets her biological father, there's an incident where he... See if I've got the wrong part of the record. Your client says her father tried to take advantage of her and tried to touch her privates, and then another time he tried to touch her breasts, tried to kiss her, and tried to come in the bathroom while she was taking a shower. Is there more than that in the record? No, that is all that is in the record. That's mentioned both in the psych report and in her direct testimony. There's no further exploration as to what else happened. Assuming that all that's true, I guess, the question that I'd rephrase Judge Fletcher's ask, is the board compelled to find that that amounts to past persecution? I would submit that under this court's precedent in Bringas-Rodriguez, that they should find that this was past persecution, acts of sexual violence. In Bringas-Rodriguez, it was forcible rape repeated. Correct, and I was just going to say that in Bringas-Rodriguez, the facts were far different. However, she was still a child at the time, and so I think when we're looking at children, the UNHCR and asylum guidelines do request that we look at what the child is experiencing at the time. We look at the significant persecution the child is experiencing. They're not adults. Their brains are undeveloped. It is a different form of experience that the children go through. The last thing any one of us is going to do is to minimize the abhorrence of the behavior. But the question is whether or not, under the standard of persecution, that constitutes persecution. We understand that. Right. I would submit that it does, that both what she suffered at the hands of her stepfather and her father. The stepfather, as I understand it, was not sexual. It was beatings. No, those were beatings, correct. Those were beatings. That was domestic violence, yes. Okay, got it. Why don't we hear from the government, and then we'll give you some time to respond. Thank you. Good morning, Your Honors. May it please the Court, my name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. Your Honors, at the outset, this case may seem complicated, because there are a lot of issues, and there are a lot of claims, but at the end of the day, the case is quite simple. Petitioner failed to establish her eligibility for asylum and withholding of removal, and failed to establish all the elements. I'll start with the gang-related claims. We're still getting this background noise. I'm not sure where it's coming from. Oh, there it is. Thank you. So I'll start with the gang-related claims. The Board relied on three findings to affirm the denial of asylum based upon the gang-related claims, and that was no past persecution, no well-founded future persecution, and that Petitioner failed to establish that it was unreasonable for her to relocate. Can I ask you about past persecution, which is a question I asked your friend? The Board seems to assume her credibility the second time through, right? Yes. Credibility is assumed. That's not an issue. Right. So a gang member stopped her, put a gun to her head, and said they would kill her if she didn't get information from her father. Is that a fair summary of what happened? For the most part, yes. Okay. Why isn't that, as Judge Fletcher suggested, a credible, given that you're treating her as credible, a sufficient threat to constitute past persecution? So in general, the court's case law is generally death threats alone are not past persecution. Right. But when accompanied by action, sometimes they are. And in this case, the action was pointing a gun to her head and saying, we'll kill you if you don't come through. Why isn't that enough? Because it wasn't an immediate threat of violence or death. The gang members, per petitioner's testimony, told her, we're going to kill you because your dad is not giving him information, and you run home and tell your father, relay that message to him for us. And that little bit there made the threat a future threat. If she didn't do something in the future, then maybe she will be killed. It wasn't that she would be killed in that instant. And she and the father took the threat seriously enough that they said, you are out of here. They believed that it was a genuine death threat sufficient to get that child out of the home and to the United States. Based on petitioner's testimony, that was the timeline of events, correct? Right, right. So if we're looking at the actors in the scene, they thought it was a serious death threat sufficient to disrupt her, send her on the long and perilous journey, and so forth. Subjectively, that may be true. And obviously that's how she felt to take it. But objectively speaking and based on the court's case law, you need an immediate credible threat of death. And this was not an immediate threat of death. It was a single isolated incident. Most of the case law has at least some pattern of threats in the past. This was just one incident. And it was a threat of future harm if she did not do something. I mean, I understand your argument. But then why doesn't it amount, why doesn't it give her a reasonable fear of future persecution? In other words, I'm not sure you can say it doesn't qualify for past persecution because they weren't going to do it right away. It was a threat about doing something in the future. But if the threat is treated as credible, which you do, why doesn't it give rise to a reasonable fear of future persecution? Because she could avoid, if you're inclined to think that way, she could avoid that future harm by relocating elsewhere in the country. Well, I was trying to look at this case without looking at the relocation finding. But on the relocation finding, does the record really support the notion that she could relocate anywhere in the country and be beyond the scope of this gang? It's her burden to show that relocation was not unreasonable. And under the circumstances, it is reasonable for her to relocate. How old was she at the time? At the time, she was approximately 19 years old. And her fear is premised on these gang members who know her association with her father and are familiar with her familiar status. And it's all localized. It's localized to her community. So you're suggesting that it's reasonable to require a 19-year-old female to relocate to another part of the country where she has no family? Relocation, the question is not only whether it will escape the threat of violence, but whether it's reasonable to expect that person in that person's circumstances to do so. I mean, it's her burden to show it was unreasonable and she didn't meet that burden. And then under the circumstances, it would be reasonable to, if she really felt like she would be killed, it would not be unreasonable for her to relocate elsewhere in the country. And moreover, her claims for future persecution are further undermined by the fact that similarly situated family members remain in the country unharmed. She said that her brother was also threatened by the gang members, but he was not harmed. It was just another threat. Her other siblings, her mother, who are also related to her father and in the familiar relationship, have remained there unharmed and unthreatened. I think the mother said that maybe the house was graffitied. That just undercuts her claim that her fear of future harm from these gang members is objectively reasonable. And either of those things, the past persecution, well, aside from the past persecution, but the internal relocation finding and the not objectively reasonable fear of future persecution based upon these gang members are each dispositive of her gang-based claims. So either is sufficient to deny her claim. Would the burden on relocation change if she had established either past persecution or a reasonable fear of future persecution? If she had established past persecution, then it would be the government's burden to show that internal relocation was reasonable. But the same set of facts that are present in the record support. No, but you seem to be relying on burden of proof. That's why I was asking. Let's assume that she hadn't established past persecution, but the record compelled the conclusion that she had a reasonable fear of future persecution. On whom would the burden lie to demonstrate that relocation was possible? It would be the government's burden if there was past persecution. Okay, so your burden argument turns on an absence of a showing of past or reasonable fear of future persecution, correct? That's correct. But even... Sorry, Your Honor, go ahead. You should finish your point and I'll ask my question after. My only point is even assuming that past persecution was established, her claim still fails because even taking out aside the internal location finding, her fear of future persecution is still not objectively reasonable from these gang members based on the status of her similarly situated family members who remain living in this country unharmed. Okay, I think my question follows up on that. Let's assume that we disagreed with the board's conclusion that past persecution had not been shown, right? So she's entitled to a presumption in that scenario. Would we in that scenario need to remand for the BIA to kind of redo all of the analysis? Or are you saying even if we disagree with the board on that one point, we still have these independent bases to deny the petition? The latter is correct. Remand would not be required because even assuming past persecution in absence of the burden for the relocation finding, her claim would still fail on the third finding by the board that her fear of future persecution was not objectively reasonable based upon the continued living of her similarly situated family members in the country. You're the one who emphasized burden of proof. And I take Judge Watford's question, and even if he wasn't asking it, I'm now asking it. Did the board approach that last finding with the correct burden of proof in mind? In other words, if we found past persecution, it would be the government's burden to overcome that presumption. Here the board seems to have found no past persecution in part because of this, or no fear of future persecution because of this. But did it allocate the burden appropriately? In this case it didn't because in the absence of past persecution, the regulations state that there's still no... I think you're right. I'm asking if we found past persecution, which was the premise of Judge Watford's question, then wouldn't we have to remand because the board didn't allocate the burden of overcoming that presumption on the government? I don't think remand would still be necessary because the board didn't just rely on the internal relocation finding. The board also separately found the objectively reasonable well-founded fear finding. Now, if we were to reverse the board on the question of past persecution and hold that the death threat was past persecution, has the board told us one way or the other as to whether or not there's a connection to a family group as a particularized social group? So I have a little chart here because there were so many findings in this case. So the IJ found, with regard to the gang claims, found an unable and unwilling to control gangs issue and a PSG issue and a Nexus issue, but the board did not make findings on those three issues. So those three issues are not properly before the court. So back to the burden of proof issue that you were talking about, should the court be inclined to find past persecution? I mean, the board didn't find on this, but the three remaining issues are also dispositive of the claim. Yeah, I've got a slightly different question. It obviously overlaps with what we've been saying here, but she's contending that family as a particular social group is established here. That's her version. Did the BIA contradict that? Did the BIA say that even if it's true that there was a serious death threat and the death threat was specifically premised upon making her father do something, that that constitutes a Nexus to a family social group, or did it just assume that? I mean, what did the board say? I've been reading this paragraph several times, and I can't quite figure it out. So the board didn't say anything about the Nexus issue, the PSG issue, or the unwilling and unable to control issue. It didn't assume it for the purposes of its decision. It just didn't address it. My view is that it didn't address it because it found the other three issues dispositive of the claim. The IJ made findings on those three issues, but the board did not. Yeah, but as to the other one, one of the others, that is to say carry the burden of relocation, that's premised upon the board's not finding persecution. So on that one, the board's wrong. It may go back and say, well, even if it's the government's burden, the government's shown it, but the way they decided it is wrong if, in fact, we say that there's been past persecution. The board also says NORA's respondent claim objectively reasonable. Its other family members have remained unharmed despite receiving similar threats. Well, I'm not sure whether they're similarly situated. If I'm a father, I might react very differently to a threat to my daughter than to a threat to my son. I mean, I'm not sure what we have here is similarly situated. I mean, she also has sisters who remain in the country unharmed. So if it was a daughter versus something, she does have a similarly situated family member. But to go back to your honor's original part, if the court were to remand the board for the past persecution issue, the board would very well issue a decision saying that the claim still fails because there's no PSG, there's no nexus, and she hasn't proved that the government was unwilling or unable to control the gang members. The board, for whatever reason, didn't make findings on that, which the IJ did. Okay. Got it. Any further questions from the bench? Okay. Thanks very much. Rebuttal. Why don't we put two minutes on the clock? Thank you, your honor. Yes, on page four of the certified administrative record, that second paragraph is lacking a lot. We assumed that the board did not really make an analysis regarding family as a particular social group, but regardless, this court does demand that the board analyze every particular social group with rigorous scrutiny. So we would request that this court find that she did suffer past persecution. It was one incident, but it was an act, it was a death threat combined with an act of violence. If we find past persecution, the matter should be remanded to then analyze the nexus issue. Can I ask you to respond to your opponent's argument that even if we were to find past persecution, so we disagreed with the BIA on that point, that the board's separate finding regarding her similarly situated siblings and mother remaining in El Salvador unharmed, that that provides an independent basis for denying the petition. Can you just respond to that particular point? Well, with that particular point, your honor, she did testify that her brother had also received a death threat. She did testify and provided a letter that's on page 738 of the certified administrative record from her father that discussed the house being graffiti, the family receiving threats. They marked the walls with the name of their gang. There was some other incidents with her two brothers where they were threatened with death by means of an anonymous note and in a personal way, indicating that they were going to pay for it where they most hurt. And so there have been ongoing death threats that was presented at the hearing, and so similarly situated persons may remain in their home country, but they had also experienced past death threats. So I do not believe the record establishes that the family is safe on the contrary, the family did experience death threats. Does the record indicate whether the family experienced anybody carried through? In other words, did they suffer any harm other than the threats? No, the record does not go, the record does not establish that. No, your honor. So answer with respect to Judge Watford's question, would it be enough for the agency to find that it's been a number of years and her family members, although threatened, perhaps like her, never suffered any future harm after the threats? Is that enough to establish that she didn't have a reasonable fear of future persecution? I don't believe it's enough. One of the things that we argued in the brief as well is humanitarian asylum, matter of LS. In this case, if the court were to find past persecution and remand back to the board, we have always argued that she would also meet the standards for humanitarian asylum where once you have found past persecution, she may suffer future harm in other serious ways. She's a young woman. She's unaccompanied. She would be returning to a country that is rife with violence. There is many articles regarding the persecution of women in her home country, gang violence, crimes that are being treated with impunity in her home country. I think the record should be remanded for us to discuss as well humanitarian asylum. Okay. Any further questions from the bench? Thank both sides for your arguments. Castellano-Retana v. Garland is now submitted for decision. Thank you. Thank you.
judges: W. Fletcher, Watford, Hurwitz